UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

SUSAN Y.,

                Plaintiff,                **DECISION AND ORDER**

     v.

                                          6:22-CV-06134 EAW

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____

# INTRODUCTION

Represented by counsel, plaintiff Susan Y. ("Plaintiff") brings this action pursuant to Title XVI of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying her application for disability insurance benefits ("DIB"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. 6[1]; Dkt. 7), and Plaintiff's reply (Dkt. 8). For the reasons discussed below, Plaintiff's motion (Dkt. 6) is granted to the extent that the matter is

---

[1] Plaintiff filed a memorandum of law but failed to file a notice of motion in support of her motion for judgment on the pleadings. Nevertheless, the Court will treat Plaintiff's submission as a pending motion.

remanded for further administrative proceedings and the Commissioner's motion (Dkt. 7) is denied.

## BACKGROUND

Plaintiff protectively filed her application for DIB on January 31, 2011. (Dkt. 5 at 165-69).[2] In her application, Plaintiff alleged disability beginning January 30, 2011. (*Id.* at 165). Plaintiff's application was initially denied on March 10, 2011. (*Id.* at 71-83). At Plaintiff's request, a hearing was held before an administrative law judge ("ALJ") on April 25, 2012. (*Id.* at 40-67). On May 17, 2012, the ALJ issued an unfavorable decision. (*Id.* at 21-27). Plaintiff requested Appeals Council review; her request was denied on May 17, 2013, making the ALJ's determination the Commissioner's final decision. (*Id.* at 8-13). Plaintiff appealed to the United States District Court for the Western District of New York. The matter was remanded by United States Magistrate Judge Jonathan Feldman for further administrative proceedings. (*Id.* at 520-554).

A second hearing was held on February 24, 2015, and continued on May 7, 2015, after which a different ALJ issued an unfavorable decision on June 22, 2015. (*Id.* at 607-15). Plaintiff requested Appeals Council review and the Appeals Council remanded the

---

[2]     When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

case back to the ALJ.  (*Id.* at 622-626).

A third hearing was held on August 25, 2016, wherein an ALJ issued another unfavorable decision on October 13, 2016.  (*Id.* at 630-40).  Plaintiff requested Appeals Council review and again the Appeals Council remanded the case back to an ALJ on July 9, 2019.  (*Id.* at 648-52).

A fourth hearing was held on November 22, 2019, before ALJ Jeremy Eldred.  (*Id.* at 484-500).  An unfavorable decision was issued on December 13, 2019.  (*Id.* at 461-473).  This action followed.

## LEGAL STANDARD

### I.  District Court Review

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g).  The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g).  "Substantial evidence means more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted).  It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation

omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence). However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II.  Disability Determination

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* § 404.1520(d). If the impairment meets or medically

equals the criteria of a Listing and meets the durational requirement, *id*. § 404.1509, the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id*. § 416.920(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work. *Id*. § 404.15(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

### I.  The ALJ's Decision

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. § 404.1520. Initially, the ALJ determined that Plaintiff met the insured status requirements of the Act through March 31, 2005. (Dkt. 5 at 463). At step one, the ALJ determined that Plaintiff had not engaged in substantial

gainful work activity during the period from her alleged onset date of January 30, 2001, through her date last insured of March 31, 2005. (*Id.* at 463).

At step two, the ALJ found that Plaintiff suffered from the severe impairment of bipolar affective disorder. (*Id.*).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (*Id.* at 464). The ALJ particularly considered the criteria of Listing 12.04 in reaching his conclusion. (*Id.* at 464).

Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform a full range of work at all exertional levels, with the following limitations:

> she can understand, remember, and carry out only simple and routine tasks; can concentrate, persist, and maintain pace in a work setting to the extent necessary to perform simple and routine tasks; can interact no more than occasionally with supervisors, co-workers, or the public; and can appropriately deal with ordinary changes in an unskilled occupation that involves only simple and routine tasks.

(*Id.* at 466). At step four, the ALJ found that Plaintiff had no past relevant work. (*Id.* at 471).

At step five, the ALJ relied on the testimony of a vocational expert ("VE") to conclude that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of sweeper/cleaner, window cleaner, and

warehouse worker. (*Id.* at 472). Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act. (*Id.* at 473).

## II.   Remand of this Matter for Further Proceedings is Necessary

Plaintiff asks the Court to vacate the ALJ's decision and remand this matter to the Commissioner, arguing that the ALJ failed to properly weigh the opinion evidence from her treating psychiatrist. Because the Court agrees that that substantial evidence does not support the ALJ's assessment of this medical opinion evidence, remand of the matter is necessary.

In deciding a disability claim, an ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013). An ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in [her] decision." *Id.* However, an ALJ is not a medical professional, and "is not qualified to assess a claimant's RFC on the basis of bare medical findings." *Ortiz v. Colvin*, 298 F. Supp. 3d 581, 586 (W.D.N.Y. 2018) (quotation omitted)). In other words:

> An ALJ is prohibited from "playing doctor" in the sense that an ALJ may not substitute [her] own judgment for competent medical opinion. This rule is most often employed in the context of the RFC determination when the claimant argues either that the RFC is not supported by substantial evidence or that the ALJ has erred by failing to develop the record with a medical opinion on the RFC.

*Quinto v. Berryhill*, No. 3:17-cv-00024 (JCH), 2017 WL 6017931, at *12 (D. Conn. Dec. 1, 2017) (quotation and citations omitted).

Similarly, the ALJ may not "cherry pick" evidence. *Lee G. v. Comm'r of Soc. Sec.*, No. 5:19-CV-1558(DJS), 2021 WL 22612, at *5 (N.D.N.Y. Jan. 4, 2021) ("Cherry picking refers to improperly crediting evidence that supports findings while ignoring conflicting evidence from the same source." (quotation and citation omitted)); *Starzynski v. Colvin*, No. 1:15-cv-00940(MAT), 2016 WL 6956404, at *3 (W.D.N.Y. Nov. 29, 2016) ("It is plainly improper for an ALJ to cherry-pick evidence that supports a finding of not-disabled while ignoring other evidence favorable to the disability claimant.") (citing *Trumpower v. Colvin*, No. 6:13-cv-6661 (MAT), 2015 WL 162991, at *16 (W.D.N.Y. Jan. 13, 2015)). "Cherry picking can indicate a serious misreading of evidence, failure to comply with the requirement that all evidence be taken into account, or both." *Younes v. Colvin*, No. 1:14-CV-170(DNH/ESH), 2015 WL 1524417, at *8 (N.D.N.Y. Apr. 2, 2015) (quotation and citation omitted).

In assessing a disability claim, an ALJ must consider and weigh the various medical opinions of record. Pursuant to the Commissioner's regulations:

> the ALJ must consider various factors in deciding how much weight to give to any medical opinion in the record, regardless of its source, including: (i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the . . . physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the

> Social Security Administration's attention that tend to support or contradict the opinion.

*Pike v. Colvin*, No. 14-CV-159-JTC, 2015 WL 1280484, at *5 (W.D.N.Y. Mar. 20, 2015) (quotation, citation, and alterations omitted).

Because Plaintiff's claim was filed before March 27, 2017, the ALJ was required to apply the treating physician rule, under which a treating physician's opinion is entitled to "controlling weight" if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record[.]" 20 C.F.R. § 404.1527(c)(2). Under the treating physician rule, if the ALJ declines to afford controlling weight to a treating physician's medical opinion, he or she "must consider various factors to determine how much weight to give to the opinion." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (internal quotation marks omitted).

If the ALJ neglects to expressly apply the requisite factors, it is considered a "procedural error." *Estrella v. Berryhill*, 925 F.3d 90, 96 (2d Cir. 2019) (quotation omitted). However, such error is harmless if "a searching review of the record" confirms "that the substance of the treating physician rule was not traversed." *Id.* (quotations omitted).

Whatever weight the ALJ assigns to the treating physician's opinion, he must "give good reasons in [his] notice of determination or decision for the weight [he gives to the] treating source's medical opinion." 20 C.F.R. § 404.1527(c)(2); *see also Harris v. Colvin*, 149 F. Supp. 3d 435, 441 (W.D.N.Y. 2016) ("A corollary to the treating physician rule is

the so-called 'good reasons rule,' which is based on the regulations specifying that the Commissioner will always give good reasons for the weight given to a treating source opinion. . . . Those good reasons must be supported by the evidence in the case record, and must be sufficiently specific. . . ." (quotation, citations, and internal quotation marks omitted)).

"Unlike a treating source, a 'nontreating source' is defined as a 'physician, psychologist, or other acceptable medical source who has examined [the plaintiff] but does not have, or did not have, an ongoing treatment relationship with [the plaintiff].'" *Cardoza v. Comm'r of Soc. Sec.*, 353 F. Supp. 3d 267, 283 (S.D.N.Y. 2019) (quoting *Calixte v. Colvin*, 14-CV-5654 (MKB), 2016 WL 1306533, at *24 (E.D.N.Y. Mar. 31, 2016)). "The ALJ is required to articulate consideration of the same factors for evaluating opinions from non-treating medical sources as those for assessing treating sources; the only exception in which the ALJ is 'not required to articulate how [he or she] considered evidence' is from nonmedical sources." *Erin B. v. Comm'r of Soc. Sec.*, No. 5:21-CV-248 (CFH), 2022 WL 2355429, at *8 (N.D.N.Y. June 30, 2022) (quotation and citation omitted); *Brittani P. v. Comm'r of Soc. Sec.*, No. 1:20-CV-775 (JLS), 2022 WL 1645811, at *3 (W.D.N.Y. May 24, 2022) ("For medical opinions of consultants or non-treating sources, 20 C.F.R. § 416.927(c)(3) provides that 'because non[-]examining sources have no examining or treating relationship with [the claimant], the weight [the ALJ] will give their medical opinions will depend on the degree to which they provide supporting explanations for their

medical opinions.'" (quoting *Messina v. Comm'r of Soc. Sec. Admin.*, 747 F. App'x 11, 16 n.4 (2d Cir. 2018))).

Finally, for mental health impairments—which are at issue in this case—the opinions offered by treating providers are "all the more important," given those impairments are "not susceptible to clear records such as x-rays or MRIs," and "depend almost exclusively on less discretely measurable factors, like what the patient says in consultations." *Flynn v. Comm'r of Soc. Sec.*, 729 F. App'x 119, 122 (2d Cir. 2018); *see also Olejniczak v. Colvin*, 180 F. Supp. 3d 224, 228 (W.D.N.Y. 2016) (explaining that "the treating physician rule is even more relevant in the context of mental disabilities, which by their nature are best diagnosed over time" (quotations and citation omitted)).

As noted, Plaintiff challenges the ALJ's assessment of the opinions provided by her treating psychiatrist Sampath Neerukonda, M.D. (Dkt. 5 at 473-77). There are five opinions from Dr. Neerukonda at issue: April 23, 2011 (*id.* at 289-95), March 28, 2012 (*id.* at 383), April 14, 2012 (*id.* at 384-88), June 26, 2012 (*id.* at 444-49), and December 19, 2014 (*id.* at 999-1001).

The April 23, 2011 opinion reflects that Dr. Neerukonda began seeing Plaintiff in November of 2003. (*Id.* at 289). The opinion documents Plaintiff's bipolar disorder diagnosis and notes that she is depressed, isolated, and withdrawn, and that she has been prescribed medication for her symptoms. (*Id.* at 289-90). Dr. Neerukonda states that Plaintiff relies on her husband to drive her places and her prognosis was listed as "poor for

life." (*Id.* at 290, 294). Dr. Neerukonda opined that Plaintiff is unable to work due to her depression. (*Id.* at 293).

The March 28, 2012 opinion similarly opines that Plaintiff is not able to perform the following functions of employment on a regular, reliable, and sustained basis: understand, remember, and carry out detailed instructions; maintain attention and concentration for at least two straight hours; perform activities within a schedule and be punctual; sustain ordinary routine without special supervision; complete a normal workweek without interruptions from symptoms; perform accurately and at a consistent pace; accept instructions and respond appropriately; work in coordination with co-workers; and deal with the stresses of skilled or semiskilled work. (*Id.* at 383). He also noted her inability to travel alone to the workplace or use public transportation. (*Id.*).

Dr. Neerukonda completed a medical source statement on April 14, 2012, that states that Plaintiff is depressed, down in the dumps, isolated, and withdrawn. (*Id.* at 384). He indicates that she is anxious and not sleeping well. (*Id.*). He opined that she is unable to work due to her depression and is totally disabled. (*Id.* at 385, 388).

On June 26, 2012, Dr. Neerukonda completed a Mental Impairment Questionnaire. In it, he opined that Plaintiff has no useful ability to function in the areas of making simple work-related decisions, completing a normal workday without interruption, getting along with coworkers, and dealing with normal work stress. (*Id.* at 446). He also found her unable to meet competitive standards in a number of other categories. (*Id.*). Dr.

Neerukonda opined that Plaintiff is moderately limited in performing activities of daily living; markedly limited in maintaining social functioning; extremely limited in maintaining concentration, persistence, and pace; and has had four of more episodes of decompensation within a 12 month period. (*Id.* at 448). He stated that she is unable to work "due to her severe bipolar disorder." (*Id.* at 449 (emphasis in original)).

Finally, in the December 19, 2014 mental health questionnaire, Dr. Neerukonda opined that Plaintiff still suffers from symptoms of depression and is unable to function. (*Id.* at 1000). He found her to have marked restrictions in her activities of daily living and episodes of deterioration or decompensation, and extreme limitations in maintaining social functioning and concentrating, persisting, or maintaining pace. (*Id.* at 1001). He concluded again that she remains unable to work. (*Id.*).

In deciding that Dr. Neerukonda's opinions were not entitled to controlling weight, the ALJ explained:

> I do not give any of Dr. Neerukonda's opinions controlling weight because I find his opinions inconsistent with other substantial evidence in the case record. The mental status examination findings in Dr. Neerukonda's treatment records from the period prior to the expiration of the date last insured are dominated by [Plaintiff's] subjective complaints of depression and anxiety. However, the objective mental status examination findings in these records constitute substantial evidence that is inconsistent with the disabling medical opinions given by Dr. Neerukonda. For instance, treatment notes from Dr. Neerukonda indicate that, with the exception of a depressed mood, anxious affect, and vague paranoia, [Plaintiff's] mental status examination findings were unremarkable (Exhibit 11F, pages 44-55). During the initial evaluation, [Plaintiff] was noted to be cooperative, alert, awake, responsive, and fully oriented. Her speech was coherent, psychosis was present. [Plaintiff's] cognition was intact, and no suicidal or homicidal

ideations were present (Exhibit 11F, page 55). One day prior to the date last insured, [Plaintiff] was again described as cooperative with normal speech. There was no evidence of loosening of associations or flight of idea. No psychosis was present, her cognition was good, and no suicidal thoughts were present (Exhibit 11F, page 44). In fact, [Plaintiff] routinely denied suicidal ideations, which is inconsistent with her testimony (Exhibit 11F, pages 45, 46, 47, 48, and 52). Furthermore, during the initial evaluation, Dr. Neerukonda assigned the claimant a Global Assessment of Functioning score of 60 to 70 (Exhibit 11F, page 55), which is defined as only mild to moderate mental health symptoms. [Plaintiff] also benefitted from her psychotropic medications (Exhibit 11F, pages 44 and 45). Records from March 30, 2005 indicate that she was "doing very well on the current regimen" (Exhibit 11F, page 44).

In sum, although the examination findings in the mental health records from the relevant period are not pristine, they are not indicative of disability either. These records also consistently document a positive response to medication.

(Dkt. 5 at 467-68).

Having concluded that the opinions were not entitled to controlling weight, the ALJ then considered the requisite factors to determine how much weight they were entitled. The ALJ recognized that the nature of the treating relationship between Plaintiff and Dr. Neerukonda and his specialty in psychiatry were entitled to significant weight. (*Id.* at 468). Similarly, the longitudinal nature of the relationship leaned in favor of significant weight, although the ALJ pointed out significant chronological gaps in the treatment history, which reduced the amount of weight given. The ALJ determined that the factors of supportability and consistency indicate that Dr. Neerukonda's opinions should be given little weight. (*Id.*). He explained his reasoning for that determination as follows: "Dr. Neerukonda generally cited [Plaintiff's] subjective complaints on the face of the assessment documents

to support his opinions, as opposed to specific mental status examination findings. Moreover, as noted above, the objective mental status examination findings in Dr. Neerukonda's treatment records constitute substantial evidence that is inconsistent with his medical opinions." (*Id.* at 468). He continued, "[t]here are other factors that also support a conclusion that Dr. Neerukonda's opinions should be given little weight. There is no indication that Dr. Neerukonda has any particular understanding of the Social Security disability program, or that Dr. Neerukonda was familiar with other information in the case record." (*Id.* at 469).

Plaintiff argues that substantial evidence does not support the ALJ's reasoning to give Dr. Neerukonda's opinions little weight. The Court agrees.

As an initial matter, to the extent the ALJ implied that a lack of objective findings warranted giving little weight to Dr. Neerukonda's opinions, this was error. Where mental impairments are at issue, reliance on subjective reports of symptoms is not atypical. *See Rucker v. Kijakazi*, 48 F.4th 86, 92 (2d Cir. 2022) ("Psychiatric testing is inherently based on subjective reports. A medical diagnosis will often be informed by the patient's subjective description of his or her symptoms."); *Stacey v. Comm'r of Soc. Sec. Admin.*, 799 F. App'x 7, 9 (2d Cir. 2020) ("[T]he ALJ's apparent expectation that a psychological opinion be formed only after diagnostic testing is unrealistic. A medical diagnosis will often be informed by the patient's subjective description of his or her symptoms."); *B.D. v. Kijakazi*, No. 2:21-CV-49, 2023 WL 2398458, at *6 (D. Vt. Mar. 2, 2023) ("In

dismissing Dr. Heinz's medical opinion of claimant's PTSD because it is based in part on his reported symptoms, '[t]he ALJ [has] effectively required 'objective' evidence for a disease that eludes such measurement.'" (quoting *Green-Younger v. Barnhard*, 335 F.3d 99, 107 (2d Cir. 2003))).

Similarly, the ALJ's emphasis on benign mental status examinations without referring to the detailed explanations and supporting information in Dr. Neerukonda's records amounted to cherry-picking and is particularly disfavored in the case of a mental impairment. *See Stacey*, 799 F. App'x at 11 ("It would be improper to rely on these mental status evaluations to conclude that Stacey is capable of prolonged concentration while simultaneously ignoring the contrary conclusion of the very physicians who made the evaluations. Neither we nor the ALJ may 'substitute [our] own expertise or view of the medical proof for the treating physician's opinion.'" (quoting *Shaw v. Carter*, 221 F.3d 126, 134-35 (2d Cir. 2000))); *Estrella,* 925 F.3d at 97 ("Cycles of improvement and debilitating symptoms [of mental illness] are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working." (quotation and citation omitted)); *Diaz v. Comm'r of Soc. Sec.*, No. 21-CV-1609(KAM), 2022 WL 16715920, at *6 (E.D.N.Y. Nov. 4, 2022) ("The ALJ focused on Dr. Jano's note about Plaintiff's memory, concentration, and attention as 'grossly intact' but did not discuss everything else encompassed in Dr. Jano's record. . . .

By relying on these 'normal' mental status evaluations alone to refute other aspects of Dr. Jano's evaluations, the ALJ improperly substituted her own medical opinion for that of the treating physician."); *Garcia v. Saul*, No. 3:19-CV-1016 (JCH), 2020 WL 5369324, at *11 (D. Conn. Sept. 8, 2020) ("Likewise, the fact that Garcia--in clinical settings--appeared 'casual, neat[,] and appropriate', spoke in a 'normal, coherent, articulate' manner, and was able to count backwards is not inconsistent with Diaz and Dr. Kryspin's determination that Garcia's symptoms of PTSD and schizophrenia, including auditory and visual hallucinations, would interfere with Garcia's ability to interact socially and perform tasks."). Here, benign mental status examinations in Plaintiff's treatment records with Dr. Neerukonda do not negate the portions of those same records reflecting complaints of extreme anxiety and nervousness, lack of sleep, lack of motivation, depressed mood and anxious affect, and vague paranoia.

Moreover, the ALJ emphasized the gaps in Plaintiff's treatment record without acknowledging the potential relationship between her bipolar disorder and such lapses. *See Michael E. v. Comm'r of Soc. Sec.*, No. 20-CV-6754S, 2022 WL 3714353, at *5 (W.D.N.Y. Aug. 29, 2022) ("The ALJ drew negative inferences from Plaintiff's lack of treatment compliance, but he failed to consider whether these difficulties could be a manifestation of plaintiff's bipolar or other mental health disorders. . . . Without such discussion, this Court finds the ALJ's rejection of Dr. Toor's opinion to be unsupported by substantial evidence." (citation omitted)); *Kelly M. v. Comm'r of Soc. Sec.*, No. 19-CV-01684, 2020 WL 6866377,

at *5 (W.D.N.Y. Nov. 23, 2020) ("In fact, it is well recognized, especially in the case of mental health, that there will be cycles of improving and declining symptoms, and the courts have stressed the importance of weighing this evidence in reaching a final decision on a plaintiff's disability."); *Jessica R. v. Berryhill*, No. 5:17-CV-236, 2019 WL 1379875, at *9 (D. Vt. Mar. 27, 2019) ("[E]vidence of symptom-free periods . . . do[es] not compel a finding that disability based on a mental disorder has ceased' because '[m]ental illness can be extremely difficult to predict, and remissions are often of uncertain duration and marked by the impending possibility of relapse." (quoting *Root v. Barnhart*, 717 F. Supp. 2d 241, 266 (N.D.N.Y. 2010))); *Jimmeson v. Berryhill*, 243 F. Supp. 3d 384, 391 (W.D.N.Y. 2017) ("Specifically, the ALJ repeatedly drew negative inferences from plaintiff's struggles with treatment compliance . . . but did not distinctly consider whether such difficulties could be a manifestation of plaintiff's bipolar or impulse control disorders. Federal courts have recognized that failure to comply with treatment can be a direct result of bipolar disorder." (citations omitted)); *Williams v. Colvin*, No. 15-CY-468-FPG, 2016 WL 4257560, at *3 (W.D.N.Y. Aug. 12, 2016) ("Despite basing his decision nearly entirely on Plaintiff's failure to fully comply with his treatment, the ALJ never considered whether that failure was willful or whether it was a symptom of Plaintiff's paranoid schizophrenia. Therefore, the ALJ failed to apply the proper legal standard and remand is necessary.").

Finally, Dr. Neerukonda provided multiple detailed opinions spanning over a number of years that addressed specific functional limitations and rather than address the

opinions specifically, the ALJ described them collectively to generally stand for Dr. Neerukonda's ultimate conclusion that Plaintiff was unable to work.  While this alone is not a basis for reversible error, in this instance, it impairs the Court's ability to review the ALJ's assessment of the opinions.  *Craig J. v. Comm'r of Soc. Sec.*, No. 20-CV-946S, 2022 WL 683153, at *6 (W.D.N.Y. Mar. 8, 2022) ("This Court agrees with Plaintiff that by combining the examinations considered collectively it is unclear which opinion the ALJ criticized."); *see also Soto v. Comm'r of Soc. Sec.*, No. 17-CV-2377 (PKC), 2018 WL 3241313, at *2 (E.D.N.Y. July 2, 2018) ("It is not incumbent upon this Court to attempt to discern the reasoning behind the ALJ's conclusion.  Rather, the ALJ must provide 'an accurate and logical bridge' from his reasoning to his conclusion." (citation and quotation omitted)).

In sum, because the Court concludes that the ALJ did not adequately evaluate the medical opinion evidence or provide "good reasons" for not crediting Dr. Neerukonda's opinions pursuant to the treating physician rule, remand is required.

## **CONCLUSION**

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (Dkt. 6) is granted to the extent that the matter is remanded for further administrative proceedings, and the Commissioner's motion for judgment on the pleadings (Dkt. 7) is denied.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated: March 25, 2024
       Rochester, New York